IN THE MATTER OF JOHN S. POWER, AN
ATTORNEY-AT-LAW.

Argued September 14, 1982—Decided October 19, 1982.

*David E. Johnson, Jr.,* argued the cause for complainant, Disciplinary Review Board (*Colette A. Coolbaugh,* Secretary, attorney).

*John J. Flynn* argued the cause for respondent.

PER CURIAM.

The factual background of these disciplinary proceedings is adequately set forth in the Decision and Recommendation of the Disciplinary Review Board (DRB), as follows:

This matter arose out of a prospective real estate transaction in which Respondent represented the seller, Eugene R. Day, a principal of Marsan

Builders, which was to convey a parcel of land to and build a house for Robert and June Handwerker. Pursuant to a binder prepared by Respondent, the Handwerkers paid a deposit of $1,000 on or about November 9, 1978. The binder recited that the $1,000 would be returned in the event a fully executed contract was not consummated within 15 days of November 9, 1978.

No contract was ever executed in this matter despite extensive negotiations; and on June 13, 1979, Mrs. Handwerker [wrote to] * * * Respondent, who had been holding the $1,000 deposit in his trust account, and requested that the money be returned. Prior to this an architect had been consulted by Respondent's client and there was an outstanding bill in the amount of $955, the responsibility for which was in dispute between Respondent's client and the Handwerkers. Despite Mrs. Handwerker's request of June 13, Respondent, on June 19, 1979, without consulting the Handwerkers, disbursed $955 to his client for payment of the outstanding bill. Subsequently, Respondent obtained the money from his client and returned it to his trust account. Settlement of the underlying dispute concerning responsibility for the bill was attempted but failed. The dispute was unresolved at the time of the Committee's last hearing on June 1, 1981.

In its report to the DRB, the District IX Ethics Committee likewise perceived the "gist of the matter" as respondent's unauthorized disbursement of $955 of complainants' funds to respondent's client. In that connection the local Committee found that

at the time of the disbursement Respondent was on clear notice that there was a dispute as to payment of the architect's bill and the return of the $1,000 to Complainants. He received no authorization from Handwerkers to disburse *their* funds to his client and relied upon his client's representation that he had secured approval from the Handwerkers for his receipt of the $955.00.

Both the local Committee and the DRB concluded that respondent's disbursement to his client of complainants' funds without authorization and in the face of an express written prohibition was clearly violative of DR1–102(A)(6), proscribing lawyer conduct "that adversely reflects on * * * fitness to practice law."

We agree. Our independent examination of the entire record satisfies us that the stated ethical transgression has been established by clear and convincing proof. In reaching this conclusion we underscore the local Committee's finding recited above, with which we concur, that respondent "relied upon his client's representation that [the client] had secured approval" from complainants for the proposed disbursement. Had it been established by clear and convincing evidence, as it was not, that respondent did

not believe his client's representation or that despite that representation he nevertheless was aware that complainants still objected to the disbursement, then we would impose more severe discipline. But even accepting respondent's position that he released the funds only after firm assurances from his client that the dispute over the deposit monies had been resolved and that complainants had no objection to the proposed disbursement, nevertheless the ethical violation remains plain. Under the circumstances, respondent was not justified in relying solely on his client's representation, particularly in the face of the written demand from complainants, who were unrepresented by counsel, that their deposit be returned. A simple telephone call or short letter to complainants seeking confirmation of the disbursement arrangement would have fulfilled the ethical obligation and avoided or at least foreshortened an entirely unnecessary acrimonious dispute.

Although the violation is clear, the issue of appropriate discipline is somewhat more difficult. The local Committee recommended a private letter of reprimand. The DRB, taking note of respondent's previous suspension in 1977 for improperly invading a client's funds held in his trust account, breaching a fiduciary duty in respect of an escrow account, and giving false testimony in regard thereto, see *In re Power,* 72 *N.J.* 452 (1977), recommended that respondent be publicly reprimanded. Although we regard respondent as hovering on the brink of suspension, we conclude that in light of his contrition before the local Committee and the absence of any evidence of malicious intent, a public reprimand represents discipline in keeping with the infraction. The indulgence represented by that discipline will not be forthcoming should respondent again run afoul of the Disciplinary Rules.

Respondent is hereby publicly reprimanded. In addition, he shall reimburse the Administrative Office of the Courts for appropriate costs, including the cost of transcripts.

So ordered.

*For reprimand*—Chief Justice WILENTZ and Justices PASH-MAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*Opposed*—None.

### ORDER

The Disciplinary Review Board having filed a report with this Court charging JOHN S. POWER of Brielle with unprofessional conduct, and good cause appearing;

It is ORDERED that JOHN S. POWER be and hereby is publically reprimanded and that a permanent record of this reprimand shall be retained in respondent's file; and it is further

ORDERED that JOHN S. POWER reimburse the Administrative Office of the Courts for appropriate administrative costs incurred in this matter, including the cost of transcripts.